## NATIONAL ELECTRIC PRODUCTS CORPORATION v. GROSSMAN.

District Court, S. D. New York.
Jan. 25, 1936.

Cooper, Kerr & Dunham, of New York City (John C. Kerr and George F. DesMarais, both of New York City, of counsel), for plaintiff.

Mock & Blum, of New York City, for defendant.

PATTERSON, District Judge.

The suit is for infringement of patent to Frederickson, 1,687,013. The patent was applied for on December 7, 1927, and was issued on October 8, 1928. It covers improvements to armored electric cable. Prior to Frederickson the armored electric cable in common use was made of two or more insulated wires, with a covering of braided fabric and an outer sheath of spirally wound metallic armor. The disadvantages of this cable were felt when connections were to be made. The armor had to be cut and removed a foot or so from the end of the wires. The hacksaw used in cutting the armor was apt to cut the insulating material also, and it left a sharp burr on the inside surface of the armor that might penetrate the insulation. The knife used in stripping the covering of braided fabric might cut the insulation around the wires. Frederickson taught that the insulated wires should be covered by spirally wound strips of paper, in place of the braided fabric, to be readily stripped back by hand and torn off, and to cooperate with a bushing of insulating material to be inserted at the end of the armor. The paper is wrapped without adhesive material, so that when it is torn off the tearing will occur a short distance within the end of the armor; a space is thus furnished into which the bushing may be easily pushed. The paper strips protect the insulated wires against the hacksaw; the bushing prevents abrasion between the sharp burr and the insulating material around the wires; the danger of cutting the insulation with the knife used in stripping is removed altogether. The new product was put on the market and won wide commercial acceptance immediately.

The patent was held valid by the Circuit Court of Appeals of this circuit in National Electric Products Corporation v. Circle Flexible Conduit Co., Inc., 62 F.(2d) 996, 997. The claims sustained were 2, 7, 8, 9, and 10. The court held that there was invention and distinguished a number of older patents cited on the prior art.

The present suit was commenced against Grossman, the seller of a product alleged to infringe. The plaintiff moved for preliminary injunction on the strength of the adjudication in the Circle Case. The Circuit Court of Appeals held [70 F.(2d) 257] that the case was not one for preliminary injunction, for two reasons. The first was that prior art not theretofore cited against the Frederickson patent had been pleaded by the defendant. The new prior art referred to was a patent to Johnson, 1,757,-049, applied for September 20, 1926, and issued May 6, 1930. This patent, it was held, raised issues as to the validity of the Frederickson patent that should not be determined on motion for preliminary injunction. The second was that infringement was not so decisively established as to warrant preliminary injunction. The defendant's affidavits tended to show that electricians who installed his cable inserted the bushing prior to stripping back and tearing off the paper wrapping; that consequently there was no space provided for the bushing by the removal of paper.

First, as to validity of the Frederickson patent. The Circuit Court of Appeals in the Circle Case dealt with all the prior patents relied on here except the Johnson patent and held them unavailing. The Johnson patent was applied for before the Frederickson patent and there is nothing in the evidence to rebut the presumption that Johnson was an inventor prior in time to Frederickson. But I am of opinion that the Johnson patent does not disclose or suggest the device covered by the patent in suit.

The Johnson patent is for an armored electric cable made by wrapping rubber-insulated wires, individually and collectively, with flat strips of paper wound spirally; the wires and the strips being coated with a nondrying sticky substance like asphaltum, and the whole being encased in metallic armor. Johnson's aim was to provide "a substantially closely bonded and practically homogeneous insulation mass," which would give efficient insulation and would be comparatively inexpensive. It was also pointed out that the tacky nature of the asphaltum would allow relative movement between the wrappings without risk of rupture under bending strains.

Johnson's patent shows that the use of spirally wound strips of paper in an armored cable was not invented by Frederick-son, but it shows nothing more. Johnson did not deal with the problems presented in making connections, nor did his patent suggest any solution of those problems. With Johnson the strips of paper were "closely bonded" by asphaltum. They were not loose and they could not be readily stripped off inside the end of the armor so as to leave a space for a bushing. The way was left open for Frederickson to devise an armored cable with loosely wrapped strips of paper which would co-operate with a bushing by permitting the easy formation of a space for the bushing. There was invention by Frederickson.

Johnson's brother, associated with him in the experiments that preceded the application for the patent and himself in the armored cable business for many years, was an expert witness for the defendant in the Circle Case. He was also a witness for the defendant here and is one of those conducting the defense of this case. It is of significance that the Johnson patent was not mentioned as part of the prior art in the Circle Case. The witness Johnson must have been of opinion then that his brother's patent, with which he was thoroughly familiar, had no bearing on the Frederickson patent. It is also of significance that the Johnsons, who are conducting the defense of the present case, do not claim that their present product is made under the Johnson patent.

Second, as to infringement. There is no infringement unless it is made evident that in using the defendant's product the electrician first strips off the paper within the end of the armored covering so as to form a space for the bushing, and then inserts the bushing between the armored covering and the insulated wires. It was only the product so formed that was Frederickson's invention. Claim 2 of the patent must be limited to this structure, both because of the specification and because it calls for a bushing interposed "between the insulated wire and the metallic sheath." The remaining claims, 7, 8, 9, and 10, all mention the clearance space for the bushing.

The defendant's product is structurally like that described in the Frederickson patent, except that the flat strips of paper are lightly glued together. Bags of bushings are furnished, and customers are notified that the bushings "in order to give best results must be inserted over paper

or braid. Said paper or braid must be removed from the projecting ends of the wires after bushing has been properly installed." For the defendant there was testimony by a number of electricians that when they used cable of the glued type they always inserted the bushing before stripping off the paper, with the result that the bushing was forced in over the paper and under the armor. There was an equal body of testimony for the plaintiff, to the effect that electricians in installing the defendant's cable stripped off the paper first and thus made a space under the armor for the bushing, just as with the plaintiff's cable. Tests made in court proved that insertion of the bushing over the paper on the defendant's cable was readily possible for a person with the strength in fingers, hand, and arm that electricians may be expected to have. The two wires with the glued paper wrapping form an elliptical cross-section, while the cross-section of the armor is circular. The point of the bushing is pushed into the clear space, and a turning movement of the bushing under strong pressure from the operator's hand will result in its being seated up to the collar. The defendant claims that its product is superior, because with the bushing inserted before tearing off the paper wrappings there is no possibility that any portion of the insulated wires will be in contact with the inner surface of the metallic armor; a thickness of paper will always be interposed, even under the bushing.

It appears therefore that while some electricians in installing the defendant's product tear back the paper strips before they adjust the bushing, an operation which results in infringement, others, apparently quite as numerous, adjust the bushing first and then tear the paper strips from the projecting ends of the wires, an operation that does not result in infringement. The manufacturer of the defendant's cable issues instructions that the latter method should be followed. In view of the proof the court cannot say that the defendant's manufacturer merely went through the form of instructing how to use the cable in a noninfringing way, having all the time the intent that it was to be used in an infringing way, and without such a finding there is no infringement.

The proof in the Circle Case, supra, was not the same as here. There was no substantial evidence in that case that the Cir-

cle cable was actually used in a noninfringing manner, nor were there demonstrations of any such use.

The burden of proving infringement is on the plaintiff. I am of the opinion that the burden has not been sustained.

There being no infringement by the defendant, the suit will be dismissed.