## COLLINS et al. v. WALLIN et al.

### No. 4998.

### District Court. D. Massachusetts.

### June 5, 1946.

Grafton L. Wilson and Hale & Dorr, all of Boston, Mass., for plaintiff.

Cedric W. Porter, Dike, Calver & Porter, and Frederick W. Mansfield, all of Boston, Mass., for defendant.

HEALEY, District Judge.

This matter came on for hearing on March 19, 1946, on an order for the defendants to show cause why an injunction pendente lite should not issue against them to restrain them from infringing the Drinker-Shaw Patent No. 1,906,453. This patent relates to a "collar" and its clamping means in any artificial respirator.

It is described in the specification as follows:

"The collar 16 is shown as made in the form of a thin flexible sheet which can be drawn taut and held in position by means of a ring 22 and four clamps 23. The clamps may be of any suitable form. As shown, they are supported on headed pins 25 about which they pivot and they are tightened by means of thrust screws 26. A collar of preferred form made of rubber of good quality is shown in cross-section in Fig. 8. The central aperture may be only an inch or two in diameter when the collar is contracted but when it is applied about the neck of the patient, it is stretched radially until it fits comfortably but tightly around the neck of the patient and then it is clamped by the ring 22 and clamps 23 in the desired position. By the use of four clamps 23 operating on the ring 22, it is possible to adjust the clamps to hold about three-fourths of the diameter of the collar while still permitting adjustment of the other one-fourth. As shown, the central portion of the collar is relatively thin but not so thin as to be easily torn during the necessary manipulations and the outer portions which are engaged by the clamping ring 22 are some-

what thicker, the better to resist damage by the clamping. Immediately around the edge of the central aperture, a slight bead 28 is formed to resist tearing. The same type of collar and adjustment thereof is used on adult as well as infant respirators.

"The rubber collar is made large enough so that it can be clamped in eccentric position relative to the aperture in the end wall thereby providing for adjustment along the face of the end wall of the casing to a position corresponding to the position of the body support and head rest."

The defendants' collar device which plaintiffs claim to be an infringement of their patent, is comprised of a sponge rubber sheet with a central neck opening and having a number of straps extending from the outer peripheral edge, with holes in the straps designed to fit over pins positioned on the end wall of the respirator. Adjustment is made in the size of the neck opening by pulling on these straps with the hands and placing the desired straphole over the pin, whereby the sponge rubber collar is held in fixed position. When the adjustment is completed by pulling and setting the straps, a circular clamp is then placed over the sponge rubber and clamped thereto, for the purpose of sealing the opening and providing an air seal.

The plaintiffs point to the decision in the case of Collins v. Emerson, 1 Cir., 82 F.2d 197, as an adjudication of the validity of the claims of their patent. They claim that the purpose of the circular clamp on defendants' device is to hold the rubber collar in its stretched position; that the pull straps are mere additions for the purpose of pulling or easing the collar in making adjustments and as preliminary holders, and thus can have no effect in avoidance of the patent claims.

The defendants, claiming that the purpose of the pull straps is to hold the sponge rubber collar at the desired opening at all times and that the only purpose of the ring clamp is to provide an air seal, deny that such a device was adjudicated in the case of Collins v. Emerson, 1 Cir., 82 F.2d 197. They state that even though plaintiffs' patent were adjudged valid in that suit, defendants' device is still not an infringement.

To grant a preliminary injunction in a patent case, it is necessary to find that the plaintiff's patent has been adjudicated and found valid, and that there has been a clear showing of infringement; Leavitt v. McBee Co., 1 Cir., 124 F.2d 938; Sinko Tool & Manufacturing Co. v. Casco Products Corporation, 7 Cir., 89 F.2d 916; Packard Paper Box Co. et al. v. O. B. Andrews Co., 1 Cir., 67 F.2d 783; Simon Bros., Inc. v. Blancard & Co., Inc., 2 Cir., 22 F.2d 498. Also that the amount of money involved in case the plaintiff is successful in his suit is large and that the defendant will be unable to respond in money damages. Walker on Patents; Sinko Tool & Manufacturing Co. v. Casco Products Corporation, 7 Cir., 89 F.2d 916; Mossberg Pressed Steel Corporation v. Chace, D.C., 29 F.Supp. 850.

In the case of Leavitt v. McBee Co., 1 Cir., 124 F.2d 938, the Circuit Court of Appeals for the First Circuit held in effect that it does not suffice for the District Court to say that a previous adjudication has settled the question of the validity of a patent, but that the court must first determine the scope of the patent whose validity was upheld. As applied to the instant case, this means that the court must determine whether or not plaintiff's patent adjudicated valid by the decision in the case of Collins v. Emerson, 1 Cir., 82 F.2d 197, 202, covered a device of the type being produced by the defendants.

In that case, the court said:

"Of the five claims (1, 3, 4, 5, and 7) relied upon in the second patent, the plaintiffs state that claim 4 is sufficiently illustrative. This claim reads as follows:

"'4. In an apparatus for producing artificial respiration, a casing to receive the body of the patient, an opening in one wall thereof through which the head of the patient projects, means to produce periodic variations in pressure within said casing and means to provide a seal for said opening comprising a stretchable rubber collar adapted to fit around the patient's neck and be clamped to the wall of said casing, and

clamp means at a plurality of points around the opening in said casing wall to clamp said collar in adjusted and stretched position.' * * *

"The other claims in issue are of the same general character as claim 4, except that they are not limited to 'clamping means at a plurality of points around the opening.' They all relate to a stretchable, adjustable collar and the means of clamping it to the end wall of the casing and adjusting the opening of the collar comfortably around the patient's neck and relative to the opening in the casing wall. * * * The question of novelty and patentability in these claims resides in the character of the rubber collar disclosed when used in conjunction with a clamping means having a plurality of clamps likewise disclosed, whereby a collar, having a relatively small opening, may be adjusted to the size of the neck of the patient and also eccentric of the opening in the middle of the removable wall, by releasing a single clamp and readjusting the collar at that point without the necessity of releasing all the clamps and readjusting the collar at all points at the same time. * * *"

In comparing plaintiffs' device with the plethysmograph with collar and clamping device of Binger and Davis, which the District Court in that case had held to have anticipated plaintiffs' device, the court said: "Furthermore the tests made before the court demonstrated that the Binger and Davis clamping means operate differently from those in issue in this patent. In the case of their clamping means (that of Binger and Davis), when the ring is locked, every portion of the rubber collar is locked and held in position and when it is partially unlocked every portion of the collar is equally released at the same time. * * * The idea of using a rubber collar, with a small aperture that could be stretched and adjusted by clamping means to fit comfortably the neck of a large person or small babe, and made sufficiently large so that the center of its aperture could be adjusted eccentrically of the opening in the end wall, with clamping means that could readily be used by anyone to make the different adjustments, was new with the patentee of the plaintiffs' device, and we think involved invention."

From the above language of the court, it appears that the Drinker-Shaw patent No. 1,906,453, now in issue, was held valid only insofar as it applied to the stretching and adjusting of the neck opening of the rubber collar *by means of a clamping device.* In the defendants' collar, all the stretching and adjusting of the neck opening is done without the aid of any clamping means whatsoever and the circular clamp is not used until all of the adjustments have been previously made.

In Thomson Houston Electric Co. v. Exeter, H. & A. Street R. Co., C.C.Mass., 110 F. 986, 987 (quoted in Leavitt v. McBee Co., supra), the court said: "When the complainants go beyond what the courts have decided in prior adjudications, and base their motion * * * upon a new and enlarged construction of the patent, issues are raised not pertinent to a motion for a preliminary injunction, and whose determination, properly, should be reserved for final hearing."

In the instant case, I am not convinced by the evidence presented, that it would not be necessary to give the patent a new and enlarged construction to find that it was infringed by the defendants' device. But, without finally determining the question of infringement, I find that the alleged infringement has not been shown to be so palpably and obviously clear as to warrant this court to grant a preliminary injunction. Also, there has been no showing made that the amount of money involved could not be adequately paid by the defendants in the event of a final termination of this suit in favor of the plaintiffs.

The plaintiffs' request for a preliminary injunction is denied.